**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

LEROY DORSEY,

                       Plaintiff,

      v.                                           No. 10-CV-1030
                                                          (DNH/CFH)

FRANK INGERSON, et al.,

                       Defendants.

---

**APPEARANCES:**                           **OF COUNSEL:**

Leroy Dorsey
Plaintiff Pro se
97-A-3442
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902


HON. ERIC T. SCHNEIDERMAN           JUSTIN L. ENGEL, ESQ.
Attorney General for the                  Assistant Attorney General
  State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Leroy Dorsey, an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants Correction Sergeant

---

    [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Christopher Collins and Corrections Officers Steven Groom and Frank Ingerson (collectively, "defendants," where appropriate) violated his constitutional rights under the Eighth Amendment. After this court dismissed Dorsey's initial complaint (Dkt. No. 39) – dismissing some claims with prejudice and others with leave to replead – Dorsey filed an amended complaint. First Am. Compl. (Dkt. No. 67). After review of the amended complaint, several defendants were terminated and claims dismissed, leaving only an excessive force claim against defendants Groom, Collins, and Frank "Doe". Dkt. No. 69, at 8-13. Dorsey was granted permission to submit a second amended complaint identifying Frank "Doe" as defendant Ingerson. Dkt. No. 88. Several of the claims asserted in Dorsey's second amended complaint were dismissed as the complaint raised claims and named defendants that were previously dismissed without leave to replead. Dkt. No. 69; Dkt. No. 100. Thus, the court accepted Dorsey's second amended complaint

> for filing only to the limited extent that (1) Frank Ingerson is substituted in place of Frank "Doe," and (2) plaintiff alleges that defendants Groom, Collins, and Ingerson subjected him to excessive force in October 2010. All other claims and defendants are dismissed from the second amended complain without leave to replead.

Dkt. No. 100, at 4.

Presently pending is defendants' motion for summary judgment. Dkt. No. 120-2. Dorsey opposed the motion. Dkt. No. 125. It is recommended that defendants' motion for summary judgment be granted for the reasons that follow.

## I. **Background**

The facts are reviewed in the light most favorable to Dorsey as the non-moving party. See subsection II (A) infra. At all relevant times, Dorsey was an inmate incarcerated at Great Meadow Correctional Facility ("Great Meadow").

2

On October 2, 2010, Collins was supervising the installation of a cell shield on Dorsey's Special Housing Unit ("SHU") cell or was otherwise outside of Dorsey's cell. Dkt. No. 120-4, at 3; Dkt. No. 125-2, at 3. Dorsey occupied this cell and was present in the cell during the installation. Dkt. No. 120-4, at 3. Collins and two additional DOCCS staff members, nonparties Officers S. Dimick and J. McCullen and Office of Mental Health ("OMH") registered nurse P. Pink, were present during the installation. Id. Dorsey apparently tied one end of a bed sheet around his neck and held the other end of the sheet up with his hands. Dkt. No. 125-2, at 3. Defendants thereafter entered Dorsey's cell and knocked him onto his bed, punching him in the face, head, and body. Second Am. Compl. (Dkt. No. 91, at 5). One defendant bent and twisted Dorsey's ankles for approximately ten minutes. Id. Defendants then cuffed Dorsey's hands behind his back, dragged him from his cell, slammed him onto a "hard stretcher," and continued to punch him in the head, face, and body for ten more minutes. Id. Defendants placed a spit net over Dorsey's face. Id. Defendants then carried Dorsey out of the F-1 company and, in doing so, dropped the stretcher to the ground. Id. They continued to punch Dorsey during transport to the hospital facility. Id. at 6. As a result, Dorsey states that he suffered swelling of his head, brain, eye, face, wrists, legs, ankles, and body; bleeding from his mouth, wrists, face, and eye; and a cracked front tooth. Id. at 6.

Dorsey filed two grievances as a result of this incident. Dkt. No. 120-11, at 1-3; Dkt. No. 120-12, at 3. These grievances were denied. Dkt. No. 120-11, at 3; Dk. No. 120-12, at 3. Dorsey alleges to have appealed. Second Am. Compl., at 2; see also Dkt. No. 125-1 ¶ 43.

3

**II. Discussion**[2]

Dorsey alleges that defendants used excessive force against him in violation of the Eighth Amendment. Defendants argue that Dorsey's second amended complaint should be dismissed because Dorsey failed to exhaust his administrative remedies.[3]

**A. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. Gallo v.

---

[2] Unpublished decisions are attached to this Report and Recommendation.

[3] Defendants also raise the personal involvement defense on behalf of defendants Ingerson and Groom and argue that Dorsey's claims are without merit. However, because it is recommended herein that defendants' motion for summary judgment be granted on other grounds, their additional arguments need not be addressed.

4

Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191–92 (2d Cir. 2008).

B. **Exhaustion**

As a threshold matter, defendants contend that Dorsey has failed to exhaust his administrative remedies. Under 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act, an inmate must exhaust all administrative remedies before bringing an action for claims relating to his incarceration, including federal civil rights cases. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted). The exhaustion requirement applies even if the administrative grievance process does not provide for all the relief

5

requested by the inmate. Nussle, 534 U.S. at 524.

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)). Thus, a court must conduct a three-part inquiry to determine whether an inmate's failure to follow the applicable grievance procedures is fatal to his or her claims. A court must consider whether:

> (1) administrative remedies are not available to the prisoner;
> (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Administrative remedies are unavailable when there is no "possibility of [] relief for the action complained of." Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v. Churner, 532 U.S. 731, 738 (2001)). The test to determine the availability of an administrative remedy is an objective one: whether "a similarly situated individual of ordinary firmness" would have deemed it accessible. Id. at 688. Unavailability may be found in circumstances "where plaintiff is unaware of the grievance procedures or did not understand it . . . or where defendants' behavior prevents plaintiff from seeking administrative remedies." Hargrove v. Riley, No. CV-04-4587 (DST), 2007 WL 389003, at *8 (E.D.N.Y. 2007) (internal citations omitted). Further, "where a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not 'available' to the defendant, and

thus the [PLRA] does not preclude the prisoner from suing in federal court." Thomas v. New York State Dep't of Corr. Servs., 00-CV-7163(NRB), 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002)(citations omitted).

Here, there is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES. R. & REGS. tit. 7, § 701.5 (2014). First, the inmate is required to file a complaint with an inmate grievance program clerk ("IGP") within twenty-one days of the alleged action. Id. at § 701.5 (a) (1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. at § 701.5 (b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after conclusion of the hearing. Id. §§ 701.5 (b)(2)(i), (ii). If unfavorable, a grievant may appeal the IGP committee's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. §701.5 (c) (1). If the superintendent's determination is unfavorable, the grievant may take the third step of the grievance procedure by appealing to the central office review committee ("CORC") within seven days after receipt of the unfavorable superintendent's determination. Id. §§ 701.5 (d)(i),(ii). CORC must issue a written decision within thirty days of receipt of the grievant's appeal. Id. § 701.5 (d)(2)(ii)

Here, Dorsey completed the first level of the grievance procedure – filing two grievances with the IGP committee – which were properly recorded, assigned grievance numbers, and decided. Dkt. No. 120-11, at 3; Dkt. No. 120-12, at 3. Although Dorsey states that he appealed the unfavorable grievance and that the result of this appeal was "C.O.R.C., more lies, cover ups," (Second Am. Compl, at 2), he fails to offer proof of such appeal. Moreover, the DOCCS's computer printout, which "contains records of all appeals

7

received from the facility Inmate Grievance Program Offices and which were heard and decided by CORC, on administrative appeal, since 1990" (Dkt. No. 120-10, at 3), establishes that Dorsey did not appeal his grievance to CORC, as required by New York Codes, Rules, and Regulations. Dkt. No. 120-13. Absent the existence of an excuse for this noncompliance, an inmate may not seek section 1983 relief in federal court. See e.g. Reyes v. Punzal, 206 F.Supp.2d 431, 432 (W.D.N.Y. 2002) (internal citation omitted).

In Dorsey's opposition to defendants' motion for summary judgment on the second amended complaint, he appears to contend that circumstances existed that rendered the administrative remedies unavailable to him – unnamed officers who collected mail stole his appeals of these grievances. Dkt. No. 125-1 ¶¶ 35-40, 43; 125-2, at 4; Dkt. No. 125-3 ¶¶ 8-9. Dorsey suggests that, in response to the legal mail tampering concerns, he filed grievance 50,691-10. See Dkt. No. 125-1 ¶ 43 (explaining that Dorsey filed "MAILSTEALING" grievance). It appears that Dorsey's legal mail tampering grievance opined that 39 pieces of legal mail were stolen between October 26 and October 28 of 2010. On December 9, DOCCS denied the legal mail tampering grievance, contending that "Correspondence Unit Supervisory staff advise that 39 pieces of outgoing legal mail were processed for the grievant between October 26 - 28, 2010. Dkt. No. 125-4, at 6. All of the grievant's outgoing mail is being processed appropriately." Id. To the extent that Dorsey suggests that his excessive force grievance appeals were among the legal mail stolen during the October 26 to October 28 time period, the record demonstrates otherwise, as his initial excessive force grievances were filed on October 28 and were received and responded to on December 14. Dkt. No. 120-12, at 3. Thus, the record demonstrates that Dorsey's mail was being properly processed during this time. Id.

8

Although Dorsey asserts that he can "easily prove" that unknown officers stole his excessive force grievance appeals, he wholly fails to demonstrate how this would be proven. Dkt. No. 125-3 ¶ 8. At the motion for summary judgment stage, an unsupported, conclusory claim such as this is insufficient to demonstrate genuine issues of material fact, especially when coupled with the fact that Dorsey continued to file several grievances and appeals within the same time frame. Dkt. No. 120-13, at 5-6 (listing the five grievances that Dorsey successfully exhausted at Great Meadow in November 2010 and the additional grievance successfully exhausted at Great Meadow in December 2010). Indeed, Dorsey's actions at the time he claims to have attempted to file appeals of the excessive force grievances disprove his suggestion that any DOCCS staff members, let alone defendants, were stealing his legal mail. First, DOCCS's denial of Dorsey's excessive force grievances was dated December 14, 2010. Dkt. 120-12, at 3. Thus, had Dorsey appealed, it would have had to been filed on or after December 14, which is close in proximity to Dorsey's appeal of his mail tampering grievance on or about December 15 of that year. Dkt. No. 120-13, at 5; Dkt. No. 125-4, at 6. However, Dorsey fails to explain why the legal mail tampering grievance filed on or about December 15 was received by CORC without issue, while the alleged excessive force claim which was likely to have been filed at the same time, was stolen. Further, Dorsey filed several other grievances and appeals during the same period of time, as well as after the excessive force incident; thus, it does not appear that administrative remedies were unavailable to him. Dkt. No. 120-13 (listing six successfully exhausted grievances Dorsey filed at Great Meadow in November and December of 2010). See Harrison v. Goord, No. 07-CV-1806 (HB) 2009 WL 1605770, at *6 (S.D.N.Y. June 9, 2009) (finding a failure to exhaust where the plaintiff contended that

9

DOCCS's staff tampered with his legal mail, yet the plaintiff continued to file several grievances during the same time period during which he contended that his legal mail was tampered with).

Insofar as Dorsey's complaint may suggest that he was in fear of filing grievances (Dkt. No. 125-1 ¶ 42), such claims are countered by the fact that Dorsey filed several grievance at the same time he alleges to have filed his excessive force grievance and continued to participate in the grievance process following his subsequent transfer to Elmira Correctional Facility. Dkt. No. 120-13, at 3-4; see also Harrison, 2009 WL 1605770, at *6 (citations omitted) (holding that alleged threats to an inmate were insufficient to render administrative remedies unavailable where inmate continued to file grievances immediately after threats were made).

Furthermore, there is no evidence that special circumstance existed to justify Dorsey's failure to appeal the grievance. As discussed, the record demonstrates that Dorsey was very familiar with the required grievance procedure, as he had filed 170 grievances through to the appeal stage during his incarceration. Dkt. No. 120-13. Finally, defendants did not waive their exhaustion defense. Defendants raised the defense in their answers to the amended and second amended complaints and motion for summary judgment on the second amended complaint. Dkt. No. 85; Dkt. No. 102; Dkt. No. 120-2, at 10.

In sum, because Dorsey's fails to plausibly present questions of fact regarding his failure to appeal his grievance determination to CORC, he has failed to exhaust his administrative remedies, which is fatal to his section 1983 claim. See Boddie v. Bradley, 228 Fed. Appx. 5, 1 (2d Cir. 2006).

Accordingly, it is recommended that defendants' motion for summary judgment be

granted on this ground.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** defendants' motion for summary judgment (Docket No. 120-2) on Dorsey's second amended complaint (Dkt. No. 91) be **GRANTED** and that judgment be granted to all defendants as to all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  October 9, 2014
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge